UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BAYER AG,<br><br>                                    Plaintiff,<br><br>                    v.<br><br>JANSSEN PHARMACEUTICALS, INC.,<br><br>                                    Defendant. | 25 Civ. 8573 (DEH)<br><br>**UNSEALED**<br><br>**MEMORANDUM<br>OPINION AND ORDER** |

DALE E. HO, United States District Judge:

Plaintiff Bayer AG ("Bayer") brings this action against Janssen Pharmaceuticals, Inc. d/b/a Johnson & Johnson Innovative Medicine ("J&J"), seeking to enforce J&J's alleged contractual obligation to use commercially reasonable efforts to promote Xarelto, an anticoagulant medication developed by Bayer and licensed to J&J in the United States. Bayer alleges that J&J eliminated its "entire in-person sales force for Xarelto" in the United States, resulting loss in sales that deprived Bayer of royalties due under the parties' agreement, while saving J&J significant sales and marketing costs. Compl. ¶ 1, ECF No. 1. J&J moves to dismiss, arguing that the Collaborative Development and License Agreement ("CDLA") specifically bars the relief Bayer seeks: what J&J terms "lost profits." *See* Mem. of Law in Supp. of Mot. to D. ("Mot."), ECF No. 21.

For the reasons stated below, the Court concludes that Bayer plausibly states a claim for direct or general lost royalties damages, and the plain language of the contract does not clearly preclude such damages. The Court further concludes, and J&J appears to concede, that interpretation of the parties' specific intent in drafting the contract is a fact-intensive, case-specific inquiry more appropriately resolved after discovery on summary judgment or at trial. Accordingly, the Motion to Dismiss is **DENIED**.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote v. New York Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In assessing the complaint, [a court] must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Id.* at 106-07. However, the court must disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'" *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Determining whether a complaint states a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[T]he court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).

## DISCUSSION

### I.     Breach of Contract

The Court assumes familiarity with the facts alleged in the Complaint, ECF No. 1, which the Court assumes to be true for purposes of adjudicating this motion. *See Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106-07 (2d Cir. 2021). To successfully bring a breach of contract claim, a plaintiff must establish: "(1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract, (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011). The Parties agree that they are bound by the CDLA and that Bayer performed its obligations; but they dispute whether J&J breached their obligations under the CDLA, and whether Bayer can recover damages resulting from J&J's breach.

J&J's motion hinges on the latter: that is, it argues that the CDLA explicitly prohibits Bayer's recovery of the damages sought because they are "lost profits," which J&J contends are specifically barred by the terms of the contract. The relevant provision reads: [Redacted]. CDLA § 16.4, ECF No. 25-1. In response, Bayer argues that this provision bars the recovery of only consequential, but not general, lost profits damages.

The Court's analysis proceeds as follows. First, the Court determines that the royalties Bayer would have received had J&J not terminated the in-person marketing team for Xarelto qualify as general, not consequential, lost profits damages. Next, the Court concludes that, by its plain terms, the contract does not clearly bar the recovery of general lost profits damages. To the extent that J&J argues that the parties specifically intended otherwise, that contention is best resolved after discovery. Accordingly, Bayer's claim for lost royalties can proceed.

### A. General or Consequential Damages

"[U]nder New York law, lost profits may be either (a) general or direct damages, or (b) consequential or special damages." *Elorac, Inc. v. Sanofi-Aventis Canada, Inc.*, 343 F. Supp. 3d 789, 800 (N.D. Ill. 2018). The New York Court of Appeals has explained the distinction between general and consequential lost profit damages as follows:

> General damages are the natural and probable consequence of the breach of a contract. They include money that the breaching party agreed to pay under the contract. By contrast, consequential, or special, damages do not directly flow from the breach . . . Lost profits may be either general or consequential damages, depending on whether the non-breaching party bargained for such profits and they are the direct and immediate fruits of the contract. Otherwise, where the damages reflect a loss of profits on collateral business arrangements, they are [consequential damages].

*Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*, 11 N.E.3d 676, 680 (N.Y. 2014). In contrast, consequential damages typically arise when:

> the ability of the non-breaching party to operate his business, and thereby generate profits on collateral transactions, is contingent on the performance of the primary

contract. When the breaching party does not perform, the non-breaching party's business is in some way hindered, and the profits from potential collateral exchanges are "lost." Every lawyer will recall from his or her first-year contracts class the paradigmatic example of *Hadley v. Baxendale*, where Baxendale's failure to deliver a crank shaft on time caused Hadley to lose profits from the operation of his mill. 9 Ex. 341, 156 Eng. Rep. 145 (1854).

*Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.,* 487 F.3d 89, 109 (2d Cir. 2007).

Based on these cases, it appears clear that the lost royalties sought by Bayer, even if lost profits, are general, not consequential, damages. As one district court interpreting a similar contractual provision under New York law explained:

> Plaintiff is not seeking "speculative profits on collateral transactions"; it is seeking the "benefit of the bargain" it made when it executed the License Agreement, *Tractebel*, 487 F.3d at 110, namely, the royalties it claims it would have earned if Sanofi had made reasonable efforts to commercialize the Product by making the same level of promotional effort and investment it made in its own products. These royalties, calculated as a percentage of net sales to be generated by Sanofi's commercialization efforts, are similar to the lost resale profits in *Biotronik* [11 N.E.3d 676] and *Orester* [*v. Dayton Rubber Manufacturing Co.*, 126 N.E. 510, 512 (1920)]. The commercialization of the Product was the essential purpose of the License Agreement, and damages caused by Sanofi's failure to perform its obligations toward that end are natural and probable consequences flowing directly from the breach. *See Am. Bd. of Cardiovascular Med., Inc. v. John Wiley & Sons, Inc.*, No. 16CV00469, 2016 WL 9383326, at *2-3 (M.D. Fla. June 15, 2016) (citing *Tractebel*, 487 F.3d at 109-10.) Elorac's lost profits are general damages.

*Elorac, Inc.*, 343 F. Supp. 3d at 801. For the same reasons, this Court concludes that the lost royalties due to allegedly insufficient commercialization pursuant to the CDLA constitute general damages.

### B. Whether the Term Lost Profits in the CDLA Applies to General Damages

Having determined that the lost royalties constitute general damages, the Court must now determine whether the limitation of liability provision precludes such damages. Again, the agreement prohibits actions for [Redacted]. CDLA § 16.4. J&J argues that, by placing lost profits within this list of terms, the parties intended to bar all actions for lost profits. According to Bayer,

4

however, to extent that this provision prohibits recovery of lost profits, it prohibits only those properly characterized as consequential damages.

Nearly identical contractual limitations of liability have come before different courts, which have on whether language of this sort precludes recovery for all lost profits (whether general or consequential), or only for consequential lost profits.  For example, in *Nielsen Co. (U.S.), LLC v. Success Sys., Inc.*, 112 F.Supp.3d 83, 102-03 (S.D.N.Y. 2015) and *In re Indesco Int'l, Inc.*, 451 B.R. 274, 315-16 (Bankr. S.D.N.Y. 2011), the bar on recovery of lost profits in the limitation of liability clauses appeared with language barring consequential damages, like in the CDLA here. Citing the maxim *noscitur a sociis* ("a word is known by the company it keeps"), the courts in these cases reasoned that the term "lost profits," given its proximity to terms like "consequential damages," must mean something similar to "consequential damages."  *Nielsen*, 112 F.Supp.3d at 102-103 ("neither party shall be liable to the other party for special, incidental, consequential, indirect, punitive or exemplary damages including but not limited to . . . lost profits"); *Indesco*, 451 B.R. at 315-316 ("NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR ANY PUNITIVE, CONSEQUENTIAL, LIQUIDATED, INCIDENTAL OR INDIRECT DAMAGES, INCLUDING DAMAGES FOR LOST PROFITS").  Numerous courts have held similarly[1]

---

[1] *See also That's What She Said, Inc. v. Gutter Games Ltd.*, No. 22 Civ. 4230, 2024 WL 3678473, at *16 (S.D.N.Y. Aug. 5, 2024) ("IN NO EVENT WILL EITHER PARTY BE LIABLE FOR ANY INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO ... LOST PROFITS OR REVENUE, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND EVEN IF SUCH DAMAGES ARE REASONABLY FORESEEABLE, WHETHER SUCH LIABILITY IS BASED ON CONTRACT, TORT, WARRANTY, OR ANY OTHER LEGAL OR EQUITABLE GROUNDS."); *Avon Co. v. Fareva Morton Grove, Inc.*, No. 22 Civ. 4724, 2026 WL 123741, at *1 (S.D.N.Y. Jan. 16, 2026) ("neither Party shall be liable to the other Party for any indirect, special, unforeseen, consequential damages, including lost profits").

But other courts construing similar language have reached different conclusions. In *Callisto Corp. v. Inter-State Studio & Publishing Co.*, No. 05 Civ. 11953, 2006 WL 1240711, at *1 (D. Mass. May 4, 2006), the license and distribution agreement provided: "NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR ANY LOSS OF REVENUE OR PROFITS OR FOR INDIRECT, INCIDENTAL, SPECIAL CONSEQUENTIAL OR OTHER SIMILAR DAMAGES[.]" The court there reasoned that interpreting such language to prohibit recovery of general lost profits damages would be absurd, because it would "prevent [the plaintiff] from recovering any unpaid royalties, including those which might already have accrued under the contract." *Id.* Under a common-sense reading of the license and distribution agreement, the Court concluded, "the phrase 'loss of revenue or profit' as used in the limitation of liability clause refers to revenues and losses in a consequential sense and does not encompass the royalty payments which are the fruit of the Agreement." *Id.* at *2. Similarly, in *Elorac, Inc.*, the court concluded that a "License Agreement [that] protects against unpaid royalties . . ." and "requires one hundred eighty days' notice before a party may unilaterally terminate it" would be rendered "essentially meaningless if a party breaching them is not liable for lost profits (or in plaintiff's case, lost royalties) as general damages in a breach of contract action." 343 F. Supp. 3d at 804. As the court went on, "there would have been no point entering into such a detailed agreement if non-performance could carry no possibility of sanction." *Id.*

Here, the Court agrees with the latter group of decisions and concludes that the text of the agreement, when viewed in light of the overall structure of the CDLA, does not plainly preclude the general lost profits damages. Rather, the limitation of liability provision appears to apply only to consequential lost profits damages. While J&J argues that the CDLA defines any lost profits as "consequential" in nature, that is not clear from its plain terms. And, when viewing the contract as a whole, the royalties here appear to be central to it, such that prohibiting recovery of these lost

6

profits would undermine enforceability of the parties' intent to create a licensing and royalty payment scheme.[2] To the extent that J&J argues that the parties specifically intended otherwise, that is a fact-intensive, case-specific inquiry more appropriately resolved after discovery on summary judgment or at trial. *See Intelligen Power Sys., LLC v. dVentus Techs. LLC*, No. 14 Civ. 7392, 2015 WL 3490256, at *7 (S.D.N.Y. June 2, 2015).

The Court also rejects J&J's contention that the inclusion of alternative remedies conclusively demonstrates an intent by the parties to prohibit recovery of general lost profits. *See* Mot. at 17-19. While true that, with the benefit of discovery, the comprehensive remedial scheme advanced by J&J may well be an accurate assessment of the parties' intent, the CDLA also states [Redacted]. CDLA § 16.8. The Court concludes that this language appears to specifically reject any notion that minimum royalty payments and suits for specific performance were intended to serve as exclusive remedies.

Accordingly, the Court concludes that Bayer's breach of contract claim may proceed.

## II.    Declaratory Judgement

J&J also seeks dismissal of Bayer's declaratory judgment claim as duplicative. Courts must consider "whether the [declaratory] judgment [sought] will serve a useful purpose in clarifying or settling the legal issues involved"; "whether [such] a judgment would finalize the controversy and offer relief from uncertainty"; and "whether there is a better or more effective remedy[.]" *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99-100 (2d Cir. 2023). "Because declaratory relief is intended to operate prospectively, there is no basis for declaratory relief where only past acts—such as a breach of contract for which damages are sought—are

---

[2] To be clear, this observation is preliminary in nature for purposes of adjudicating the motion to dismiss, is not a conclusive ruling as to the purpose of the CDLA, and is without prejudice to arguments to the contrary at a later stage of the litigation.

involved." *Alta Partners, LLC v. Getty Images Holdings, Inc.*, 700 F.Supp.3d 32, 48 (S.D.N.Y. 2023). Accordingly, Count I must be dismissed unless Bayer seeks clarification on the future rights and obligations of the Parties under the CDLA.

The Court concludes that, taking the facts alleged in the Complaint as true, declaratory relief is appropriate. To begin, J&J's breach is alleged to be ongoing, and a declaration regarding liability for the termination of the in-person sales force would have prospective consequences. *See* Compl. ¶¶ 7-9, 35. Further, the relief sought regarding J&J's marketing obligations is not duplicative of the breach of contract provision, as "the two claims seek distinct relief; any ruling on the breach of contract claim would resolve the question of outstanding reverse royalties, but not that of any future royalties" or obligations under the contract. *Novartis Pharma AG v. Incyte Corp.*, No. 20 Civ. 400, 2024 WL 3610438, at *61 (S.D.N.Y. July 29, 2024). And assuming the truth of Bayer's allegations regarding suppressed royalties due to insufficient marketing, clarifying J&J's ongoing marketing obligations would serve the "useful purpose" of avoiding future damages due to depressed sales. *See Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005).

Thus, the Motion to Dismiss Count I is also **DENIED**.

### III.    Motions to Seal

As a final matter, the parties have filed three unopposed motions to seal various documents associated with the briefing on the Motion to Dismiss, including: (1) various exhibits submitted in connection with the motion to dismiss, *see* ECF No. 23 (seeking sealing of ECF Nos. 25-1 through 25-5); (2) portions of Bayer's Opposition Brief, *see* ECF No. 27 (seeking sealing of ECF No. 28, redacted version at ECF No. 29); and (3) portions of J&J's Reply Brief, *see* ECF no. (seeking sealing of ECF No. 33, redacted version at ECF No. 31).

### A. Legal Standard

The Court applies a three-part inquiry to determine whether to seal a document. *See Olson v. Major League Baseball*, 29 F.4th 59, 87-88 (2d Cir. 2022). First, a court determines whether a document is a "judicial document," subject to a presumptive public right of access. *See id.* at 87. A judicial document is "a filed item that is relevant to the performance of the judicial function and useful in the judicial process." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016).

Second, a court determines the weight of the presumption that attaches to the document, looking to "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Olson*, 29 F.4th at 87-88. "The presumption of public access exists along a continuum. The strongest presumption attaches where the documents determine litigants' substantive rights, and is weaker where the documents play only a negligible role in the performance of Article III duties." *Id.* at 89. However, documents do not "receive different weights of presumption based on the extent to which they [are] relied upon in resolving the motion." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2d Cir. 2006).

"Finally, once the weight of the presumption has been assessed, the court is required to balance competing considerations against it." *Olson*, 29 F.4th at 88. "[C]ontinued sealing of the documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Lugosch*, 435 F.3d at 124. Competing considerations may include the protection of "sensitive business information," the release of which could cause a litigant "competitive harm." *Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 608 (S.D.N.Y. 2022). "A further countervailing consideration is the privacy interests of innocent third parties

9

which should weigh heavily in a court's balancing equation." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14 Misc. 2542, 2023 WL 196134, at *4 (S.D.N.Y. Jan. 17, 2023), *reconsideration denied*, 2023 WL 3966703 (S.D.N.Y. June 13, 2023) (citing *Application of Newsday, Inc.*, 895 F.2d 74, 79-80 (2d Cir. 1990)). The court may deny public disclosure of the record only "if the factors counseling against public access outweigh the presumption of access afforded to that record." *Olson*, 29 F.4th at 88.

### B. Application

The parties seek to seal confidential business information relating to the CDLA through limited redactions of the briefing in this matter and filing of the CDLA and its exhibits under seal, ostensibly to protect competitively sensitive financial information regarding the parties' contractual relationship (e.g., discussion of royalty payments, termination rights, and damages), as well as other competitively sensitive, confidential contractual terms (e.g., the confidentially negotiated terms regarding marketing and sales). These are plainly judicial documents to which a high presumption of public access attaches, as they are submitted in connection with a dispositive motion—indeed, the CDLA is central to the dispute in this case.

Nevertheless, the Court concludes that sealing is appropriate because the parties have adequately established that disclosure of these sensitive, private contractual terms would likely result in competitive harm to J&J and Bayer, including in future negotiations of similar agreements with other parties, and expose valuable non-public information about their strategic business practices. *See, e.g., Coach IP Holdings, LLC v. ACS Grp. Acquisitions LLC*, No. 23 Civ. 10612, 2024 WL 3965936, at *2 (S.D.N.Y. Aug. 27, 2024) (granting party's request to seal the licensing agreement in its entirety because its disclosure may harm the plaintiffs "by disadvantaging [it] in negotiating future licensing agreements") (citing *Rubik's Brand Ltd. v. Flambeau, Inc.*, No. 17 Civ. 6559, 2021 WL 1085338, at *1 (S.D.N.Y. Mar. 22, 2021)); *Gracyzk v. Verizon Commc'ns,*

*Inc.*, No. 18 Civ. 6465, 2020 WL 1435031, at *8-9 (S.D.N.Y. Mar. 24, 2020) (granting party's request to seal portions of contracts that contained "sensitive financial information" that would cause them to suffer "competitive disadvantage in future negotiations").  The Court further concludes that, because the exhibits consist entirely of confidential, competitively sensitive contractual terms, sealing these exhibits "in their entirety" is "the most narrowly tailored means of sealing them." *Xinuos, Inc. v. IBM Corp.*, No. 22 Civ. 9777, 2025 WL 1394026, at *2 (S.D.N.Y. Apr. 1, 2025) (sealing documents containing "confidential and commercially sensitive business and marketing information that could harm each of the parties' competitive standing if publicly disclosed").  Accordingly, the Motions to Seal are **GRANTED**.

**CONCLUSION**

For the reasons discussed herein, J&J's Motion to Dismiss, ECF No. 20, is **DENIED**.  The Motions to Seal, ECF Nos. 23, 27, and 32, are **GRANTED**.  ECF Nos. 25-1 through 25-5, 28, and 33 shall remain under seal.  Redacted redacted versions of the latter two documents remain on the public docket at ECF Nos. 29 and 31.

Within 14 days of this Order, the parties are directed to file a joint letter indicating whether the parties would like to be referred to the District's mediation program or to the assigned magistrate judge, Judge Aaron, for a settlement conference.  Judge Aaron will issue an order regarding next steps in this litigation following publication of this Opinion.

The Clerk of Court is respectfully directed to terminate ECF Nos. 20, 23, 27, and 32.

SO ORDERED.

Dated: August 4, 2026
New York, New York

_____
DALE E. HO
United States District Judge

11